UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA D. THRELKELD,<br><br>    Plaintiff,<br><br>    v.<br><br>SHARON MCKAY, et al.,<br><br>    Defendants. | Case No. 1:22-cv-00656-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 4)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Joshua Threlkeld ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This action was removed from Kern County Superior Court on May 31, 2022. (ECF No. 1).[1]

On September 9, 2022, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 3). The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; or b. Notify the Court in writing that he wants to stand on his complaint." (Id. at 12).

---

[1] The Court notes that this action was removed by defendant McKay. (ECF No. 1, p. 1). The Court has reviewed the docket, and there is no indication that defendant Lundy has appeared or been served.

1

On October 3, 2022, Plaintiff filed his First Amended Complaint. (ECF No. 4). Plaintiff generally alleges that Defendants denied him access to religious meals.

The Court has reviewed Plaintiff's First Amended Complaint, and for the reasons described in this order, will recommend that this action be dismissed for failure to state a claim.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges as follows in his First Amended Complaint:

Plaintiff is an Augustinian/Christian, and his belief is sincerely held and has been for at least eleven years.

On or about October 1, 2019, he applied for a Religious Meal Alternate ("RMA") Card. This card allows an inmate to receive meals in accordance with the inmate's religious beliefs. To get a card, an inmate submits an application on a California Department of Corrections and Rehabilitation ("CDCR") Form 30/30 to a Chaplin.  However, Plaintiff's application was denied without reason by unqualified state employees, defendant Sharon McKay and/or defendant L. Lundy.  On October 27, 2020, defendant Lundy denied his request for a second time, stating on the denial form "No sincere religious belief for RMA, which serves processed food…."  (ECF No. 4, p. 11) (alteration in original).

Neither defendant has the proper credentials to be a clergyman.

Plaintiff was denied religious meals for over one year and nine months.  He did not receive an RMA card and religious meals until July 29, 2021, and this only happened because he filed a 602.  Accordingly, Plaintiff alleges that Defendants violated his First Amendment free exercise rights.

Plaintiff also alleges that Defendants violated his due process rights because CDCR regulations state that "The Chaplain or designated represented of the RRC shall [] [i]nterview the inmate requesting the religious diet."  (Id. at 12).  Plaintiff argues that because this regulation uses the word "shall," it created a liberty interest.  No interview ever took place. Instead, Plaintiff's request was denied without due process of law.

Plaintiff also alleges that Defendants violated the Equal Protection Clause because other inmates in CDCR custody that were similarly situated to Plaintiff and who requested an RMA card were interviewed and issued their RMA cards.

Finally, Plaintiff alleges that Defendants violated his Eight Amendment rights.  While Defendants did not totally deprive Plaintiff of food, they forced him to eat food outside of his religious beliefs by failing to provide him an RMA card.  Plaintiff argues that religious meals

qualify as a "basic need," and that failure to provide the meals imposed an atypical and significant hardship. Plaintiff alleges that Defendants acted maliciously and sadistically for the very purpose of causing harm. It is well known that inmates charged as a sex offender are abused by staff. Defendants help to promote, either intentionally or inadvertently, a custom or culture of abuse towards inmates charged as sex offenders. There can be no other reasonable explanation, other than his charges, to explain why Defendants denied him his card. The reason given by Defendants does not justify the denial.

### III.  ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183

(9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a

reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. First Amendment Right to Free Exercise of Religion

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion]. The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (alteration in original) (citations and internal quotation marks omitted). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)). "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'" Id. (quoting O'Lone, 482 U.S. at 349).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity. Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (citations and internal quotation marks omitted), supplemented, 65 F.3d 148 (9th Cir. 1995); see also Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies).

Additionally, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." Jones, 791 F.3d

at 1031.  "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 1031-32 (alterations in original) (citation and internal quotation marks omitted).

Plaintiff alleges that he is an Augustinian/Christian, and that his belief is sincerely held and has been for at least eleven years.  Plaintiff also alleges that he applied for an RMA card by submitting an application, but his application was denied by unqualified state employees for no reason.  Plaintiff alleges this denial lasted for over one year and nine months.

The Court finds that Plaintiff fails to sufficiently allege that either defendant violated his First Amendment right to free exercise of religion.  In the prior screening order, the Court found that "Plaintiff provide[d] no allegations regarding his religion or how being denied access to the meals burdens the practice of his religion," and told Plaintiff that "[i]f Plaintiff chooses to amend his complaint, he should include additional factual allegations to cure" this deficiency.  (ECF No. 3, p. 7).  However, Plaintiff failed to cure this deficiency.  As with his prior complaint, Plaintiff provides no allegations regarding his religion or how being denied access to religious meals burdens the practice of his religion.[2]  While Plaintiff does allege that he is an Augustinian/Christian, he does not describe any part of his faith that concerns dietary restrictions or meals.  There are no allegations regarding how being denied religious meals coerced or pressured Plaintiff into violating his religious beliefs.  Compare, Lavell v. Davey, 2019 WL 1744859, at *4 (C.D. Cal. Jan. 16, 2019) ("In screening the initial Complaint, the Court found, 'the Complaint does not adequately allege that Plaintiff's need for a kosher diet is a sincerely held religious belief, or that denial of a kosher diet is a substantial burden.'  The FAC also does not include these requisite factual allegations.  While the exhibits attached to the initial Complaint suggested that Plaintiff is an 'Orthodox Christian' seeking a kosher diet for 'healthy living,' the FAC does not even allege Plaintiff's religious belief, let alone that the

---

[2] If Plaintiff believes he can cure these deficiencies in an amended complaint, he should indicate as such in his objections to these findings and recommendations, along with a summary of the relevant facts, which will be considered in due course.

denial of kosher meals substantially burdens Plaintiff's practice of religion.") (citations omitted); with Hammler v. Clark, E.D. CA, Case No. 1:19-cv-00373 ECF Nos. 1, 26, & 28, & 32 (allowing a First Amendment free exercise claim to proceed past screening where the plaintiff alleged that he was repeatedly served raw meat, even though he is a Rastafarian who adheres to the dietary laws outlined in the old testament book of Leviticus and cannot eat raw meat or non-Kosher foods).

Accordingly, the Court finds that Plaintiff fails to state a First Amendment free exercise claim.

### C. The Religious Land Use and Institutionalized Persons Act of 2000

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise[3] of a person residing in or confined to an institution…, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Plaintiff must allege facts demonstrating that a defendant substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation or action at issue "substantially burdens" that religious exercise. Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" Hartmann, 707 F.3d at 1124–25 (citing San Jose Christian Coll. v. City

---

[3] "Congress defined 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" (quoting 42 U.S.C. § 2000cc-5(7)(A)). In fact, "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion…." Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005).

of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)). "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in Emp't Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 878–82, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)." Int'l Church of Foursquare Gospel, 673 F.3d at 1067 (citing Guru Nanak, 456 F.3d at 988). "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Hartmann, 707 F.3d at 1124-25 (citing Warsoldier, 418 F.3d at 995).

Generally, money damages are not available under RLUIPA against a state or state officials sued in their official capacities because "in accepting federal funding, [states] do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver." Sossamon v. Texas, 563 U.S. 277, 293 (2011). And, RLUIPA does not contemplate liability of state employees in their individual capacities. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or injunctive relief against state employees acting within their official capacities.

It is not clear, but Plaintiff may be attempting to bring a claim under RLUIPA. To the extent that he is, Plaintiff's RLUIPA claim fails for the same reasons as his First Amendment free exercise claim. The Court also notes that there are no allegations suggesting that Plaintiff is currently being denied religious meals or that he is at risk of being denied religious meals in the future by either Defendants or by prison policy. Additionally, Plaintiff appears to allege that neither defendant currently works at his institution of confinement. (ECF No. 4, pgs. 2-3).

### D. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due

Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

Once again, the bases of Plaintiff's procedural due process claim(s) are not clear. Plaintiff appears to allege that a state regulation created a liberty interest in being interviewed regarding his religious diet request, but he was denied his interview.

Plaintiff fails to allege a sufficient deprivation to be entitled to due process. The United States Supreme Court, in a case involving a disciplinary proceeding that resulted in a punishment of thirty days in solitary confinement, held that while States may create liberty interests, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). In Sandin the Supreme Court held that neither thirty days in solitary confinement nor issuance of a Rules Violation Report that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural due process protections. See also Chappell v. Mandeville, 706 F.3d 1052, 1064 (9th Cir. 2013) (after Sandin, the Ninth Circuit's decisions "have focused only on the 'atypical and significant hardship' test, even in the face of relevant prison regulations"). Here, there are no allegations suggesting that denying Plaintiff an interview, an RMA card, or religious meals subjected him to an atypical and significant hardship in relation to the ordinary incidents of prison life.

Moreover, even if Plaintiff had a liberty interest in being interviewed, there are no allegations regarding what process Plaintiff should have been provided, but was not, before he was deprived of the interview.

Finally, based on Plaintiff's allegations, Plaintiff was provided with process. He filed an application for an RMA card, and his application was denied. He then appealed the denial

10

by filing a 602, and it appears that his appeal was successful. After filing the 602 Plaintiff was provided with an RMA card and religious meals.[4]

Accordingly, the Court finds that Plaintiff fails to state a procedural due process claim.

### E. Equal Protection

The equal protection clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, Hartmann, 707 F.3d at 1123 Furnace, 705 F.3d at 1030, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008), Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008), North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Inmates are not a protected class. Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998); Veenstra v. Idaho State Bd. of Correction, 785 F. App'x 390, 391 (9th Cir. 2019).

Plaintiff alleges that his equal protection rights were violated because other inmates in CDCR custody that were similarly situated to Plaintiff and who requested an RMA card were interviewed and issued their RMA cards. However, Plaintiff's allegations are conclusory. Plaintiff does not sufficiently allege how he and the other inmates are similarly situated.[5]

To the extent Plaintiff alleges that he was treated differently because he was charged as

---

[4] The Court notes that there was a long delay between when Plaintiff first filed his application and when he finally received religious meals. However, the reason for the delay is unclear. Plaintiff does not allege when he filed his 602 or how long it took for the 602 to be granted.

[5] To the extent Plaintiff is attempting to bring a "class-of-one" equal protection claim, Plaintiff "must be similarly situated to the proposed comparator in all material respects." SmileDirectClub, LLC v. Tippins, 31 F.4th 1110, 1123 (9th Cir. 2022).

a sex offender, there are no factual allegations suggesting that either defendant denied him an interview, an RMA card, or religious meals because he was charged as a sex offender.

Finally, there are no allegations suggesting that Plaintiff was denied an interview, an RMA card, or religious meals because of the religion he practices.

Accordingly, the Court finds that Plaintiff fails to state an equal protection claim.

### F. Cruel and Unusual Punishment in Violation of the Eighth Amendment

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. Farmer, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." Id. (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. Id. at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather,

the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff alleges that Defendants violated his Eighth Amendment rights because they forced him to eat food outside of his religious beliefs by failing to provide him an RMA card. Plaintiff further alleges that Defendants acted maliciously and sadistically for the very purpose of causing harm.

Plaintiff's allegation that Defendants acted maliciously and sadistically for the very purpose of causing harm is conclusory. Even assuming that failing to provide religious meals harmed Plaintiff's health, Plaintiff fails to sufficiently allege that either defendant knew that Plaintiff should be provided with religious meals yet refused to provide them.[6] In fact, Plaintiff alleges that, when denying his request for a second time, defendant Lundy stated that Plaintiff had "No sincere religious belief for RMA, which serves processed food…."

Plaintiff does allege that Defendants denied him access to religious meals because he was charged as a sex offender, but there are no factual allegations to support this conclusory assertion.

Accordingly, the Court finds that Plaintiff fails to state an Eighth Amendment claim.

**IV. CONCLUSION, RECOMMENDATIONS, AND ORDER**

The Court recommends that this action be dismissed for failure to state a claim, without granting Plaintiff further leave to amend. In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order, but failed to cure the deficiencies identified by the Court. Thus, it appears that further leave to amend would be futile.

---

[6] The Court notes that, under the First Amendment, "[i]nmates [] have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987). However, as discussed above, Plaintiff fails to state a First Amendment claim.

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This action be dismissed, with prejudice, for failure to state a claim; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **March 6, 2023**        /s/ Erica P. Grosjean
                                UNITED STATES MAGISTRATE JUDGE